**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| TOBY JAMES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-11-1183 |
| | § | |
| | § | |
| CONCEPTUS, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This is a whistleblower-retaliation action under the False Claims Act, 31 U.S.C. § 3730(h).

The plaintiff, Toby James, worked in Texas as a sales representative for Conceptus, Inc., a medical-

device firm.  James alleges that Conceptus fired him after he questioned the legality of how a sales

representative had marketed Conceptus medical devices to physicians and how those physicians had

billed Medicaid for them.  After James sued in this court, (Docket Entry No. 1), Conceptus moved

to compel arbitration under James's employment agreement and to dismiss this suit in favor of that

arbitration.  (Docket Entry No. 5).  James responded by arguing that the Dodd–Frank Wall Street

Reform and Consumer Protection Act of 2010[1] made the arbitration clause unenforceable.  (Docket

Entry No. 7).  Conceptus replied and James surreplied.  (Docket Entry Nos. 12, 14).  Conceptus also

moved to stay discovery pending the decision on the arbitration motion.  (Docket Entry No. 17).

Because the employment agreement James signed specified that California law applied, this

court ordered the parties to address the Supreme Court's decision in *AT&T Mobility LLC v.*

---

[1]Pub. L. No. 111-203, 124 Stat. 1376 (2010).

*Concepcion*, 131 S. Ct. 1740 (2011), in particular how it affected the California Supreme Court's

decision in *Armendariz v. Foundation Health Psychcare Services*, 6 P.3d 669 (Cal. 2000).  (Docket

Entry No. 20).  The parties presented argument at a hearing, (Docket Entry No. 22), and James filed

supplemental authority, (Docket Entry No. 21).

Based on the pleadings, the motion and responses, the record, and the applicable law, this

court rules as follows:

- the Dodd–Frank Act does not make the arbitration clause unenforceable;

- the provision requiring James to pay half of all arbitration costs is unconscionable under California law but can be severed; and

- the remainder of the arbitration clause, including the requirement that James arbitrate in California, is enforceable.

Based on these rulings, the motion to dismiss in favor of arbitration, (Docket Entry No. 5),

is granted.  The motion to stay discovery, (Docket Entry No. 17), is denied as moot.  The reasons

for these rulings are explained below.

## I.    Background

James lives in Houston; Conceptus is headquartered in California.  Conceptus sells Essure,

a female birth-control device.  Conceptus hired James in August 2008 to work as a Regional Sales

Representative for the Texas area.  (*See* Docket Entry No. 1, ¶ 9; Docket Entry No. 5, at 1; Docket

Entry No. 7, at 7).  When James started work, Conceptus required him to sign a "Proprietary

Information and Inventions Agreement."  The Agreement confirmed James's status as an at-will

employee.  (Docket Entry No. 5, Ex. A, ¶ D).  It also contained a mandatory-arbitration clause.  That

clause stated:

I agree that any dispute concerning the meaning, effect or validity of
this Agreement shall be resolved in accordance with the laws of the

2

State of California without regard to the conflict of laws provisions thereof.  I further agree that any dispute I may have with the Company, or any of its employees, which arises out of my employment or the termination of that employment, shall be resolved through final and binding arbitration in San Mateo County of the State of California.

This shall include, without limitation, any controversy, claim or dispute of any kind, including disputes relating to my employment with the Company or the termination thereof . . . and any claims of discrimination or other claims under . . . any other federal, state or local law or regulation now in existence or hereinafter enacted and as amended from time to time concerning in any way the subject of my employment with the Company or my termination.

The only claims not covered by this agreement are claims for benefits under the workers' compensation or unemployment insurance laws, which will be resolved pursuant to those laws.  Each party will split the cost of the arbitration filing and hearing fees and the cost of the arbitrator; each side will bear its own attorneys' fees, that is, the arbitrator will not have the authority to award attorneys' fees <u>unless</u> a statutory section at issue in the dispute authorizes the award of attorneys' fees to the prevailing party, in which case the arbitrator has authority to make such award as permitted by the statute in question. The arbitration shall be instead of any civil litigation; this means that I am **waiving any right to a jury trial**, and that the arbitrator's decision shall be final and binding to the fullest extent permitted by law and enforceable by any court having jurisdiction thereof.

(*Id.*, ¶ F (emphasis in original)).  The Agreement also contained a severability clause:

I further agree that if one or more provisions of this Agreement are held to be illegal or unenforceable under applicable California law, such provision(s) shall be limited or excluded from this Agreement and the balance of the Agreement shall be interpreted as if such provisions were so limited or excluded and shall be enforceable in accordance with its terms.

(*Id.*, ¶ G).

Two years later, in August 2010, James assumed responsibility for several sales accounts that had been handled by another Conceptus salesman.  Some of these accounts were for physicians'

3

offices.  James alleges that soon after taking over these accounts, he discovered information that led him to believe that this salesman had discounted or given Essure kits and related products to physicians to induce them to recommend and use Essure in treating their patients.  James alleges that he also discovered information leading him to believe that some of these physicians had sought full reimbursement from Medicaid for kits that they had received at either discounted or zero cost.  James reported his concerns up the ladder and was told to investigate one of the physicians' offices.  That physician sent a written complaint to Conceptus's CEO after James visited.  Conceptus's Director of Human Resources told James about the complaint on October 26, 2010.  The following day, Conceptus fired James.  In this lawsuit, James alleges that Conceptus fired him in retaliation for his whistleblowing activity, in violation of the False Claims Act, 31 U.S.C. § 3730(h).  (Docket Entry No. 1, ¶¶ 9–25).

Conceptus has moved to compel arbitration under the Agreement and to dismiss this lawsuit in favor of that arbitration.  (Docket Entry No. 5).  In response, James argued that the Dodd–Frank Act makes the clause unenforceable.  (Docket Entry No. 7).  In his surreply, James argued more generally that the clause is unenforceable as unconscionable.  (Docket Entry No. 14, at 4–5).  James filed an affidavit describing his financial situation and his economic inability to pursue his claim if he has to arbitrate in California instead of litigate in Houston federal court.  As of September 2011, the date of the affidavit, James had depleted his savings and was selling assets.  Although he had found new employment, he was paid on commission and did not expect to earn any income from the new position until March 2012.  (Docket Entry No. 14, Ex. A).

The issue is whether the arbitration clause is enforceable.

## II.      The Applicable Law

4

In 1925, Congress enacted the Federal Arbitration Act "as a response to judicial hostility to arbitration," *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 668 (2012), to "ensure that private arbitration agreements are enforced according to their terms," *Concepcion*, 131 S. Ct. at 1748 (internal quotation marks and alteration omitted). "This purpose," the *Concepcion* Court stated,

> is readily apparent from the FAA's text. Section 2 makes arbitration agreements "valid, irrevocable, and enforceable" as written (subject, of course, to the saving clause); § 3 requires courts to stay litigation of arbitral claims pending arbitration of those claims "in accordance with the terms of the agreement"; and § 4 requires courts to compel arbitration "in accordance with the terms of the agreement" (assuming that the "making of the arbitration agreement or the failure . . . to perform the same" is not at issue). In light of these provisions, we have held that parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit with whom a party will arbitrate its disputes[.]

*Id.* at 1748–49 (internal citations and emphasis omitted).

The question in *Concepcion* was "whether § 2 preempts California's rule classifying most collective-arbitration waivers in consumer contracts as unconscionable." *Id.* at 1746. The California rule was known as the *Discover Bank* rule after the California Supreme Court's decision in *Discover Bank v. Superior Court*, 113 P.3d 1100 (2005). The *Concepcion* Court held that § 2 preempted the *Discover Bank* rule because it "disfavored" arbitration. 131 S. Ct. at 1747. Although the specific issue in *Concepcion* was the enforceability of a class-action waiver in an arbitration agreement, the Court stated the basis of the ruling more broadly: if the state law singles out arbitration agreements by imposing requirements that do not apply to other contracts, § 2 of the FAA preempts applying that law to "disfavor" arbitration. This approach is shown in post-*Concepcion* Supreme Court decisions that enforced arbitration clauses that lower courts had found invalid. *See Marmet Health Care Ctr., Inc. v. Marchio*, 565 U.S. —, 2012 WL 538286, at *1 (2012) (per curiam); *CompuCredit*,

132 S. Ct. 665; *cf. KPMG LLP v. Cocchi*, 132 S. Ct. 23 (2011) (per curiam) (reversing state appellate court's decision refusing to compel arbitration and remanding). A recent Ninth Circuit case, *Kilgore v. Keybank, National Association*, — F.3d —, 2012 WL 718344 (9th Cir. 2012), also follows this approach. In *Kilgore*, the Ninth Circuit considered whether § 2 preempted another California unconscionability rule. That rule, named after the California Supreme Court's decisions in *Broughton v. Cigna Healthplans of California*, 998 P.2d 67 (1999), and *Cruz v. Pacificare Health Systems, Inc.*, 66 P.3d 1157 (2003), treated as unconscionable arbitration clauses in cases seeking broad public injunctive relief. *Kilgore*, 2012 WL 718344, at *1. The Ninth Circuit explained that "the *Broughton–Cruz* rule does not survive *Concepcion* because the rule 'prohibits outright the arbitration of a particular type of claim'—claims for broad public injunctive relief." *Id.* at *10 (quoting *Concepcion*, 131 S. Ct. at 1747).

Section 3 of the FAA requires federal courts, on a party's motion, to stay litigation of claims subject to arbitration. 9 U.S.C. § 3. District courts must conduct a two-step inquiry to determine whether to grant a motion to stay or dismiss under § 3 in favor of arbitration:

> First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable. When considering the first question, there are two considerations: (1) whether there is a valid agreement between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.

*Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (internal quotation marks and footnotes omitted). Assuming a valid agreement to arbitrate, a court must decide whether the dispute is covered by the parties' agreement. The Supreme Court recognizes a presumption of arbitrability when there is a valid agreement. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*,

475 U.S. 643, 650 (1986); *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006).   The

presumption is consistent with the FAA's "strong national policy favoring arbitration of disputes[.]"

*Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (internal quotation marks

omitted); *accord Woodmen of the World Life Ins. Soc'y/Omaha Woodmen Life Ins. Soc'y v. JRY*,

320 F. App'x 216, 221 (5th Cir. 2009).

Section 2, the FAA's savings clause, states that arbitration clauses are "valid, irrevocable,

and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

contract." 9 U.S.C. § 2.   "This provision establishes a liberal federal policy favoring arbitration

agreements." *CompuCredit*, 132 S. Ct. at 669 (internal quotation marks omitted).   "[A]s a matter

of federal law, arbitration agreements and clauses are to be enforced *unless* they are invalid under

principles of state law that govern all contracts." *Iberia Credit Bureau, Inc. v. Cingular Wireless

LLC*, 379 F.3d 159, 166 (5th Cir. 2004) (emphasis in original) (interpreting § 2).   "Thus, generally

applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to

invalidate arbitration agreements without contravening § 2." *Doctor's Assocs., Inc. v. Casarotto*,

517 U.S. 681, 687 (1996).   Applying these defenses contravenes § 2, however, if they "apply only

to arbitration or [] derive their meaning from the fact that an agreement to arbitrate is at issue."

*Concepcion*, 131 S. Ct. at 1746; *see also Marmet Health Care*, 2012 WL 538286, at *2.   The FAA

preempts state law applied to disfavor arbitration agreements as opposed to other contracts.  *See

Concepcion*, 131 S. Ct. at 1747; *Kilgore*, 2012 WL 718344, at *13.

Although California's unconscionability doctrine applies to contracts generally, in

*Concepcion*, the Supreme Court invalidated California's *Discover Bank* rule, which held that

arbitration clauses containing waivers of class actions in arbitration were unconscionable.   The

*Discover Bank* rule applied unconscionability "in a fashion that disfavors arbitration" because the rule applied only to class-action waivers in arbitration contracts and precluded the arbitration of claims subject to those contracts. 131 S. Ct. at 1747. The Ninth Circuit applied the same rationale in *Kilgore* in holding that the FAA preempted California's *Broughton–Cruz* rule, because that rule applied only to arbitration contracts and precluded arbitration in a certain category of claims. 2012 WL 718344, at \*13; *see also generally Doctor's Assocs.*, 517 U.S. at 687 ("By enacting § 2, we have several times said, Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed upon the same footing as other contracts." (internal quotation marks omitted)).

Arbitration clauses generally are severable from the contracts in which they appear. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2858 (2010); *ITT Educ. Servs., Inc. v. Arce*, 533 F.3d 342, 344–45 (5th Cir. 2008) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967) and *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006)). In some cases, a court may sever an unenforceable provision in an otherwise enforceable arbitration clause. In an opinion describing when such severance is proper, then-Judge Roberts (now-Chief Justice) explained:

> Decisions striking an arbitration clause entirely often involved agreements without a severability clause, *see, e.g.*, [*Perez v. Global Airport Sec. Servs., Inc.*, 253 F.3d 1280, 1286 (11th Cir. 2001), *vacated in* 294 F.3d 1275 (11th Cir. 2002)], or agreements that did not contain merely one readily severable illegal provision, but were instead pervasively infected with illegality, *see, e.g.*, [*Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1248–49 (9th Cir. 1994)]; *Hooters v. Phillips*, 173 F.3d 933, 938–39 (4th Cir. 1999). Decisions severing an illegal provision and compelling arbitration, on the other hand, typically considered agreements with a severability clause and discrete unenforceable provisions, *see, e.g.*, [*Morrison v. Circuit City*

8

> *Stores, Inc.*, 317 F.3d 646, 675 (6th Cir. 2003)]; [*Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 680 (8th Cir. 2001].

*Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 84 (D.C. Cir. 2005).  Fifth Circuit precedent is consistent.  "[A] provision of an arbitration agreement is severable if the intent of the parties at the time of the agreement demonstrates that the essence, the essential term, of the bargain was to arbitrate, while the provision at issue was merely a minor consideration."  *Galey v. World Mktg. Alliance*, 510 F.3d 529, 533 (5th Cir. 2007) (internal quotation marks omitted).  In the end, the "critical consideration in assessing severability" of an illegal provision, as opposed to striking the entire arbitration agreement, "is giving effect to the intent of the contracting parties."  *Booker*, 413 F.3d at 84.

## III.    Analysis

James does not dispute that he entered into a valid agreement containing an arbitration clause or that it applies to this dispute.  The issue is the enforceability of that clause.

### A.    The Argument that the Arbitration Clause is Unenforceable under the Dodd–Frank Act

James's primary argument in opposing arbitration is that the recently enacted Dodd–Frank Act makes the arbitration agreement he signed unenforceable.  Dodd–Frank amended the whistleblower provisions of the Commodity Exchange Act and the Sarbanes–Oxley Act to make unenforceable any predispute arbitration clause for disputes arising under those whistleblower sections. Pub. L. No. 111-203, 124 Stat. 1376, 1746, 1848 (codified as amended at 7 U.S.C. § 26(n)

and 18 U.S.C. § 1514A(e)).[2]   Dodd–Frank did not similarly amend the False Claims Act's antiretaliation provision under which James sues.   James nevertheless contends that Dodd–Frank's amendment to Sarbanes–Oxley extends to his False Claims Act cause of action.   But the section under which James's dispute arises, 31 U.S.C. § 3730(h), contains no provisions similar to the whistleblower provisions of the Commodity Exchange Act and the Sarbanes–Oxley Act that Dodd–Frank amended to invalidate predispute mandatory arbitration clauses.   Although Dodd–Frank did amend § 3730(h), the amendment extended the statute of limitations—nothing more.   Pub. L. No. 111-203, 124 Stat. 1376, 2079 (codified as amended at 31 U.S.C. § 3730(h)(3)).   "When Congress amends one statutory provision but not another, it is presumed to have acted intentionally." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 2349 (2009).   Dodd–Frank's antiarbitration amendments to other statutes cannot be extended by implication to the antiretaliation provisions of the False Claims Act, especially when Dodd–Frank amended other parts of the False Claims Act but not the provision at issue.   *See also Ruhe v. Masimo Corp.*, No. SACV 11-00734-CJC(JCGx), 2011 WL 4442790, at *4 (C.D. Cal. Sep. 16, 2011) (explaining that Dodd–Frank's antiarbitration amendments extend only to the two statutes discussed above).

James's argument that the Dodd-Frank Act makes the arbitration clause unenforceable is unpersuasive.

### B.     The Argument that the Arbitration Clause is Unenforceable under California Law on Unconscionability

---

[2]In creating whistleblower protection for employees raising possible violations of the Dodd–Frank Act, Dodd–Frank also rendered unenforceable any individual predispute arbitration agreements for such disputes.   Pub. L. No. 111-203, 124 Stat. 1376, 2035 (codified at 12 U.S.C. § 5567(d)).

James's secondary argument, discussed in his surreply, is that the arbitration clause is unconscionable under California law and therefore unenforceable under the FAA's savings clause. The Agreement specifies that California law governs disputes about the Agreement, including its validity. (Docket Entry No. 5, Ex. A, ¶ F).[3]

*Concepcion* does not upset the long-settled principle that, under the FAA, "generally applicable contract defenses, such as fraud, duress, *or unconscionability*," may make an arbitration clause unenforceable. 131 S. Ct. at 1746 (quoting *Doctor's Assocs.*, 517 U.S. at 687) (emphasis added); *see also Kilgore*, 2012 WL 718344, at *13 ("*Concepcion* did not overthrow the common law contract defense of unconscionability whenever an arbitration agreement is involved."). Instead, *Concepcion* clarifies that state-law contract defenses—such as unconscionability—that are applied to disfavor arbitration are preempted by § 2. *See id.* at 1747–48; *Kilgore*, 2012 WL 718344, at *13 ("Rather, the Court reaffirmed that the savings clause preserves generally applicable contract defenses such as unconscionability, so long as those doctrines are not 'applied in a fashion that disfavors arbitration.'"). Pre-*Concepcion* case law applying unconscionability to single out arbitration contracts to disfavor arbitration must be examined carefully to be sure it remains valid. *See, e.g.*, *Grabowski v. Robinson*, — F. Supp. 2d —, 2011 WL 4353998, at *9 n.1 (S.D. Cal. 2011); *Kanbar v. O'Melveny & Myers*, — F. Supp. 2d —, 2011 WL 2940690, at *6 (N.D. Cal. 2011); *Sanchez v. Valencia Holding Co.*, 135 Cal. Rptr. 3d 19, 28–29 (Ct. App. 2011).

### 1.    California Law on Unconscionability

---

[3]Although the Agreement states that choice-of-law rules does not affect the application of California law, Texas choice-of-law rules would give effect to this provision. *See, e.g.*, *Alkek & Williams, Ltd. v. Tuckerbrook Alternative Invs., L.P.*, 419 F. App'x 492, 495 (5th Cir. 2011) (per curiam) (citing *Monsanto Co. v. Boustany*, 73 S.W.3d 225, 229 (Tex. 2002)).

California statutorily recognizes unconscionability as a generally applicable contract defense:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause so as to avoid any unconscionable result.

CAL. CIVIL CODE § 1670.5(a).   The Ninth Circuit recently summarized the doctrine's general principles:

> Under California law, an arbitration agreement, like any other contractual clause, is unenforceable if it is both procedurally and substantively unconscionable. *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007).  California courts apply a "sliding scale" analysis in making this determination: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 99 Cal. Rptr. 2d 745, 6 P.3d 669, 690 (2000)).  Thus, although both procedural and substantive unconscionability must be present for the contract to be declared unenforceable, they need not be present to the same degree. *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 7 Cal. Rptr. 3d 418, 422 (2003).

*Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010); *accord Kilgore*, 2012 WL 718344, at *13.

### a.    Procedural Unconscionability

Procedural unconscionability "focus[es] on 'oppression' or 'surprise' due to unequal bargaining power[.]" *Concepcion*, 131 S. Ct. at 1746 (quoting *Armendariz*, 6 P.3d at 690).[4]

---

[4]Cases decided under California law before *Concepcion* held that procedural unconscionability may be established if an agreement to arbitrate were imposed as a condition of employment.  *See, e.g.*, *Sonic-Calabasas A, Inc. v. Moreno*, 247 P.3d 130, 145 (Cal.), *summarily vacated in light of Concepcion in* 132 S. Ct. 496 (2011); *see also Davis*,

"Oppression results from unequal bargaining power, when a contracting party has no meaningful choice but to accept contract terms.  Unfair surprise results from misleading bargaining conduct or other circumstances indicating that party's consent was not an informed choice." *Dotson v. Amgen, Inc.*, 104 Cal. Rptr. 3d 341, 346 (Ct. App. 2010).

Under California law on oppression, "[i]t is well settled that standardized, adhesive contracts drafted by the stronger party are procedurally unconscionable." *Unimax Express, Inc. v. Cosco N. Am., Inc.*, No. CV 11-02947 DDP (PLAx), 2011 WL 5909881, at *3 (C.D. Cal. Nov. 28, 2011) (citing *Pokorny*, 601 F.3d at 996); *accord, e.g.*, *Newton v. Am. Debt. Servs., Inc.*, No. A093409, 2012 WL 581318, at *6 (N.D. Cal. Feb. 22, 2012) (citing *Flores v. Transamerica HomeFirst, Inc.*, 113 Cal. Rptr. 2d 376, 381–82 (Ct. App. 2001)); *Hendricks v. AT&T Mobility, LLC*, — F. Supp. 2d —, 2011 WL 5104421, at *5 (N.D. Cal. 2011).  Since *Concepcion*, courts continue to find that adhesive contracts are procedurally unconscionable, although many of these courts stress in the context of arbitration clauses that the degree of procedural unconscionability is low.  *See Newton*, 2012 WL 581318, at *6 (citing *Sanchez*, 135 Cal. Rptr. 3d at 31); *Hendricks*, 2011 WL 5104421, at *6; *Ajamian v. CantorCO2e, L.P.*, — Cal. Rptr. 3d —, 2012 WL 503876, at *17 (Ct. App. 2012); *Sanchez*, 135 Cal. Rptr. 3d at 31.

"Oppression [] is only one factor in the procedural unconscionability analysis.  The other factor is surprise[.]" *Sanchez*, 135 Cal. Rptr. 3d at 31 (quoting *Smith v. Americredit Fin. Servs., Inc.*, No. 09cv1076 DMS (BLM), 2009 WL 4895280, at *6 (S.D. Cal. Dec. 11, 2009), *summarily vacated*

---

485 F.3d at1073 (9th Cir.2007) ("[I]f an employee has a meaningful opportunity to opt out of the arbitration provision when signing the agreement and still preserve his or her job, then it is not procedurally unconscionable.").  Because this unconscionability rule is unique to arbitration agreements, *Concepcion* appears to preempt it.  This court need not decide this question because the Agreement is procedurally unconscionable under California's generally applicable unconscionability law.

*on other grounds in light of* Concepcion *by* 2011 WL 6170545 (9th Cir. Dec. 13, 2011)). "[S]urprise

involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form

drafted by the party seeking to enforce them." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280

(9th Cir. 2006) (en banc) (quoting *Flores*, 113 Cal. Rptr. at 853). "Surprise will not exist where the

provision is clearly written, easily understood, and conspicuously placed." *Affholter v. Franklin*

*Cnty. Water Dist.*, No. 1:07-CV-0388 OWW DLB, 2008 WL 5385810, at *11 (E.D. Cal. Dec. 23,

2008); *see also Kilgore*, 2012 WL 718344, at *14.  Courts have found "surprise" when the provision

at issue is buried in a standardized contract away from the signature block.  *See Newton*, 2012 WL

581318, at *7 (arbitration clause located on the back side of the contract that required the customer's

signature on the front side); *Lau v. Mercedes-Benz USA, LLC*, No. CV 11-1940 MEJ, 2012 WL

370557, at *8 (N.D. Cal. Jan. 31, 2012) (same); *Sanchez*, 135 Cal. Rptr. 3d at 32 (arbitration clause

located at the bottom on the back side of the contract).  By contrast, when the party's signature block

is next to the arbitration clause, courts will not find surprise.  *See Johannsen v. Morgan Stanley*

*Credit Corp.*, No. 2:11-cv-01516-MCE-KJN, 2012 WL 90408, at *4 (E.D. Cal. Jan. 11, 2012);

*Greenbriar Homes Communities, Inc. v. Superior Court*, 11 Cal. Rptr. 3d 371, 375 (Ct. App. 2004)

Similarly, courts do not find surprise if the arbitration clause is clearly highlighted, such as by "bold

and conspicuous language[.]" *Brazil v. Dell Inc.*, No. C-07-01700 RMW, 2007 WL 2255296, at *5

(N.D. Cal. Aug. 3, 2007); *see also Kilgore*, 2012 WL 718344, at *14 (an arbitration clause is not

procedurally unconscionable when it appears in its own section of the contract and plainly states,

more than once, the rights the person is giving up); *Affholter*, 2008 WL 5385810, at *12; *McCabe*

*v. Dell, Inc.*, No. CV 06-7811-RGK, 2007 WL 1434972, at *3 (C.D. Cal. Apr. 12, 2007); *Santos v.*

*Household Int'l, Inc.*, No. C03-1243 MJJ, 2003 WL 25911112, at *5 (N.D. Cal. Oct. 24, 2003);

*Alexander v. Prof'l Exchange Serv. Corp.*, No. F059647, 2011 WL 1490906, at *9 (Cal. Ct. App. Apr. 20, 2011).

### b.        Substantive Unconscionability

Substantive unconscionability focuses "on 'overly harsh' or 'one-sided' results." *Concepcion*, 131 S. Ct. at 1746 (quoting *Armendariz*, 6 P.3d at 690).  The inquiry is on "the fairness of the term in dispute." *Pokorny*, 601 F.3d at 997 (quoting *Szetela v. Discover Bank*, 118 Cal. Rptr. 2d 862, 867 (Ct. App. 2002), *abrogated in part by Concepcion*, 131 S. Ct. 1740)).  If the disputed term "is one-sided and will have an overly harsh effect on the disadvantaged party[,]" substantive unconscionability is present. *Id.* (citing *Harper*, 7 Cal. Rptr. 3d at 423).

### c.        *Armendariz*

The primary California case on the enforceability of an employee's mandatory predispute arbitration agreement is *Armendariz*.  In that case, two individuals filled out employment applications with predispute arbitration clauses.  After they were hired, they signed a separate arbitration agreement.  They were later fired and sued, alleging wrongful termination under California's Fair Employment and Housing Act.  The former employer moved to compel arbitration. The employees responded that the arbitration agreement was unenforceable because it was unconscionable. 6 P.3d at 674–75.  The California Supreme Court, relying on the D.C. Circuit's decision in *Cole v. Burns International Security Services*, 105 F.3d 1465 (1997), set out four requirements for any mandatory employment predispute arbitration agreement to survive an unconscionability challenge.  First, the agreement could not limit statutorily available remedies, such as punitive damages and attorneys' fees. *Armendariz*, 6 P.3d at 682.  Second, the agreement could

not preclude the availability of adequate discovery. *Id.* at 684. Third, a written decision had to accompany any arbitration decision, to permit judicial review. *Id.* at 685. Fourth, "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Id.* at 687 (emphasis in original).

Applying these requirements, the California Supreme Court found two provisions of the arbitration clauses at issue unlawful. First, only the employee—not the employer—was required to submit claims to arbitration. Second, the arbitration clauses impermissibly limited the employees' statutorily available remedies. *See id.* at 697. The California Supreme Court held that the trial court did not abuse its discretion in concluding that severance was unavailable because unconscionability permeated the arbitration agreement. *Id.*

Courts have questioned *Armendariz*'s continuing viability after *Concepcion*. *See Ruhe*, 2011 WL 4442790, at *2 (explaining that FAA preemption might change the reasoning and result of *Armendariz* but avoiding the question because the clause at issue did not violate the case); *Oguejiofor v. Nissan*, No. C-11-0544 EMC, 2011 WL 3879482, at *3 (N.D. Cal. Sep. 2, 2011) (noting that *Concepcion* abrogated *Armendariz* in part (without specifying which part)); *Lona v. Citibank, N.A.*, 134 Cal. Rptr. 3d 622, 637 (Ct. App. 2011) (same); *Baeza v. Superior Court*, 135 Cal. Rptr. 3d 557, 568 (Ct. App. 2011) (same).[5]

---

[5] One California Court of Appeal's modified opinion demonstrates uncertainty about *Concepcion*'s effect on *Armendariz*. In its initial opinion, the panel wrote, "Before applying *Armendariz* to the present case, we note that *Concepcion* does not preclude the application *of the* Armendariz *principles* to determine whether an arbitration provision is unconscionable." *Sanchez v. Valencia Holding Co.*, 132 Cal. Rptr. 3d 517, 526 (Ct. App. 2011) (internal citation omitted) (emphasis added). On rehearing, the panel vacated its previous opinion. Its amended opinion contained this

The general *Armendariz* rule is in serious doubt following *Concepcion*. *Armendariz* sets categorical, *per se* requirements specific to arbitration clauses. The *Armendariz* requirements, though couched in terms of unconscionability, cannot be described as grounds that "exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, because they "apply only to arbitration [and] derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1746; *see also Kilgore*, 2012 WL 718344, at *13. "[T]he policy arguments justifying the [*Armendariz*] rule, however worthy they may be, can no longer invalidate an otherwise enforceable arbitration agreement." *Kilgore*, 2012 WL 718344, at *10. To the extent *Armendariz* precludes arbitration in any employment dispute if the employee is required to bear *any type* of expense not present in litigation, it appears preempted by § 2.

### 2.    James's Challenges to the Arbitration Clause

James specifically objects to two parts of the arbitration clause: the provisions requiring him to split the costs of the arbitration proceeding with Conceptus, and to arbitrate in San Mateo County, California. (*See* Docket Entry No. 5, Ex. A, ¶ F).

Under California unconscionability law, the Agreement that James signed is an adhesive contract. "States remain free to take steps addressing the concerns that attend contracts of adhesion—for example, requiring class-action-waiver provisions in adhesive arbitration agreements to be highlighted"—so long as such steps are generally applicable and do not act to "disfavor" arbitration. *Concepcion*, 131 S. Ct. at 1750 n.6. Although the level of oppression is at best minimal, the Agreement's arbitration clause also is characterized by elements of surprise. The clause is in

---

modified sentence: "Before applying *Armendariz* to the present case, we note that *Concepcion* does not preclude the application *of the unconscionability doctrine* to determine whether an arbitration provision is unenforceable." *Sanchez*, 135 Cal. Rptr. 3d at 28 (internal citation omitted) (emphasis added).

a document entitled "Proprietary Information and Inventions Agreement." (Docket Entry No. 5, Ex. A, at 1). The title suggests that this contract relates to the protection of proprietary information and inventions, not to other aspects of employment or employment disputes. The arbitration clause is in the same font and size as the rest of the Agreement. No heading accompanies it or sets it off. The employee's signature line is on a separate page from the arbitration clause. These elements of surprise in an adhesive contract make the Agreement procedurally unconscionable to some degree.

Unconscionability requires not only procedural but also substantive unconscionability. *See Kilgore*, 2012 WL 718344, at *13. Under *Armendariz*, the cost-splitting provision in the arbitration clause is substantively unconscionable, without any further inquiry. "[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Armendariz*, 6 P.3d at 687 (emphasis in original). In *Little v. Auto Stiegler, Inc.*, 63 P.3d 979 (2003), the California Supreme Court applied *Armendariz* to hold that cost-splitting provisions in arbitration agreements were substantively unconscionable on a *per se* basis as against public policy. The court found no FAA preemption because the state-law rule was

> not a barrier to the enforcement of arbitration agreements, nor does it improperly disfavor arbitration in comparison to other contract clauses. Rather, it is derived from state contract law principles regarding the unwaivability of certain public rights in the context of a contract of adhesion.

*Id.* at 992; *see also Parada v. Superior Court*, 98 Cal. Rptr. 3d 743, 764 (Ct. App. 2009).

To the extent *Armendariz* invalidates all cost-splitting provisions in arbitration agreements as a categorical rule, it likely is abrogated by *Concepcion*.  *See Concepcion*, 131 S. Ct. at 1747; *Kilgore*, 2012 WL 718344, at *13.  The issue is whether such a cost-splitting provision would be unenforceable under California's generally applicable unconscionability doctrine.  James argues that it would because, given his financial situation, he could not pursue his statutory rights if he had to pay half the costs of arbitrating.

To the extent that California courts "consider[] the amount of arbitration fees and costs, and the ability of the party resisting arbitration to pay them, as factors in assessing substantive unconscionability of a predispute arbitration agreement," *Parada*, 98 Cal. Rptr. 3d at 764, the approach is closer to that recognized in *Green Tree Financial Corp.–Alabama v. Randolph*, 531 U.S. 79 (2000).  In that case, the question was "whether an arbitration agreement that does not mention arbitration costs and fees is unenforceable because it fails to affirmatively protect a party from potentially steep arbitration costs."  *Green Tree*, 531 U.S. at 82.  The Supreme Court noted that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum," making the agreement unenforceable.  *Id.* at 90.  The party claiming prohibitive expense "bears the burden of showing the likelihood of incurring such costs."  *Id.* at 92.  In *Green Tree*, the litigant did not meet that burden because she presented nothing but a conclusory assertion in a brief.  *Id.* at 90–91 & n.6.  In *Little*, the California Supreme Court surveyed existing federal case law and stated:

> Although *Green Tree* did not elaborate on the kinds of cost-sharing arrangements that would be unenforceable, dicta in that case, and several federal cases cited above interpreting it, suggest that federal law requires only that employers not impose "prohibitively expensive" arbitration costs on the employee and that determination

19

> of whether such costs have been imposed are to be made on a case-by-case basis.

63 P.3d at 992 (internal citation omitted).

Recent federal cases follow this case-specific approach. *See In re Am. Express Merchants' Litig.*, 667 F.3d 204, 216 (2d Cir. 2012) ("We continue to find *Green Tree* controlling here to the extent that it holds that when a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." (internal quotation marks omitted)); *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 780 (10th Cir. 2010) (quoting *Green Tree*'s discussion of the burden to demonstrate prohibitive costs and explaining that the plaintiffs had not met their burden); *Cicle v. Chase Bank USA*, 583 F.3d 549, 556–57 (8th Cir. 2009) (citing the *Green Tree* standard but holding that the record did not support a finding of economically prohibitive costs); *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1003 (6th Cir. 2009) (explaining that, to determine whether a cost-splitting provision in an arbitration agreement is enforceable, courts must conduct "a case-by-case inquiry into whether the potential costs of arbitration are great enough to deter potential litigants and similarly situated individuals from seeking to vindicate their federal statutory rights in the arbitral forum" (internal quotation marks and alteration omitted)); *James v. McDonald's Corp.*, 417 F.3d 672, 679 (7th Cir. 2005) (explaining that it was unclear whether *Green Tree*, which applied to federal statutory claims, extended to common-law or state-law claims, but that even if it did, the party opposing arbitration had not shown that "that the expenses she necessarily and definitely would incur would make arbitration prohibitive").

In this case, James has submitted an affidavit discussing his financial situation. He has explained that he has no current income and has almost no savings. He "can't afford to pay for ½ of an arbitrator, the arbitrator's fees, the filing fees, the hearing fees, the arbitration room rental, etc." (Docket Entry No. 14, Ex. A, at 2). This record evidence demonstrates that, were this court to enforce the arbitration clause's cost-splitting provision, James would face what for him would be prohibitive expense. Even if the relevant part of *Armendariz* and *Little* is invalid after *Concepcion*, under generally applicable California unconscionability doctrine applied on a case-by-case basis, the cost-splitting provision is substantively unconscionable because James has shown prohibitive expense. *See Antonelli v. Finish Line, Inc.*, No. 5:11-cv-03874 EJD, 2012 WL 525538, at *5–6 (N.D. Cal. Feb. 16, 2012); *Laughlin v. VMware, Inc.*, No. 5:11-CV-00530 EJD, 2012 WL 298230, at *5 (N.D. Cal. Feb. 1, 2012) (citing *Chavarria v. Ralphs Grocer Co.*, 812 F. Supp. 2d 1079, 1087–88 (C.D. Cal. 2011)); *Andrade v. Superior Court*, No. H034960, 2011 WL 1782031, at *12 (Cal. Ct. App. May 10, 2011). Under generally applicable California unconscionability law valid after *Concepcion*, the cost-splitting provision is unenforceable.

James also challenges the provision requiring him to arbitrate in San Mateo, California. He argues that he cannot afford to fly from Texas to California, to stay in a hotel during the California arbitration, or—by far the biggest expense he cites—retain local counsel for arbitration in California.

California law generally applies an unreasonableness standard to forum-selection contract clauses. "In California, 'forum selection clauses are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement of such a clause would be unreasonable.'" *Trident Labs, Inc. v. Merrill Lynch Commercial Fin. Corp.*, 132 Cal. Rptr. 3d 551, 556 (Ct. App. 2011) (quoting *Smith, Valentino & Smith, Inc. v. Superior Court*, 551 P.2d 1206, 1209

(Cal. 1976)); *accord Nagrampa*, 469 F.3d at 1287.  "However, if the 'place and manner' restrictions of a forum selection provision are 'unduly oppressive,' *see Bolter v. Superior Court*, 87 Cal. App. 4th 900, 909–10, 104 Cal. Rptr. 2d 888 (2001), or have the effect of shielding the stronger party from liability, *see Comb v. PayPal, Inc.*, 218 F. Supp. 2d 1165, 1177 (N.D. Cal. 2002), then the forum selection provision is unconscionable."  *Nagrampa*, 469 F.3d at 1287.  "To assess the reasonableness of the 'place and manner' provisions in the arbitration clause, we must take into account the 'respective circumstances of the parties.'"  *Id.* at 1288.

The post-*Concepcion* problem is that, despite this broad formulation, California courts appear to apply unconscionability differently to mandatory forum-selection provisions in arbitration clauses than to forum-selection clauses in contracts more generally.  The California courts apply unconscionability to preclude arbitration when the claimant faces expenses because of the forum location that he or she would not face if able to litigate without contractual restraints.  California cases involving employer-employee disputes illustrate the difference in application between forum-selection clauses dictating where a dispute must be litigated and clauses requiring arbitration and dictating where that will occur.  An example of the former is *Olinick v. BMG Entertainment*, 42 Cal. Rptr. 3d 268 (Ct. App. 2006).  Olinick, a senior vice president at BMG Entertainment, was fired in a company reorganization.  Olinick sued in California state court, alleging wrongful termination. BMG moved to stay or dismiss the litigation based on a forum-selection clause in Olinick's employment agreement that required litigation—not arbitration—in New York. *Id.* at 271–73.  The trial court agreed.  On appeal, the California Court of Appeal stated the general California rule for mandatory forum-selection clauses:

> [I]f there is a mandatory forum selection clause, the test is simply whether application of the clause is unfair or unreasonable, and the clause is usually given effect. Claims that the previously chosen forum is unfair or inconvenient are generally rejected. A court will usually honor a mandatory forum selection clause without extensive analysis of factors relating to inconvenience. Mere inconvenience or additional expense is not the test of unreasonableness of a mandatory forum selection clause.

*Id.* at 274 (quoting *Berg v. MTC Elecs. Techs. Co.*, 61 Cal. App. 4th 349, 358–59, 71 Cal. Rptr. 2d 523 (Ct. App. 1998)) (internal quotation marks, alterations, and emphasis omitted). The *Olinick* court held that "[a]n employer and an employee may validly agree to select a forum other than California, and may validly select the substantive law of another jurisdiction, provided the employee has an adequate remedy for his or her discrimination claim in the selected forum." *Id.* at 1305 (emphasis omitted). The court enforced the forum-selection clause, concluding that the New York court provided an adequate remedy. *See id.*

By contrast, in cases involving a forum-selection clause in an arbitration agreement, California law imposes a more stringent standard. In *Nagrampa*, a Ninth Circuit decision applying California law, and *Bolter*, a California Court of Appeal decision, the courts concluded that mandatory forum-selection provisions in the arbitration clauses were categorically unconscionable because they required an out-of-state claimant to travel to another state to arbitrate and to pay the costs incident to arbitrating in the distant location. *See Nagrampa*, 469 F.3d at 1289–90; *Bolter*, 104 Cal. Rptr. 2d at 894–95. The standard was far more demanding than whether the contractually selected forum provided an adequate remedy for the claim. The courts did not require the claimants to prove the prohibitive costs they would incur or their economic circumstances. The cases show that California unconscionability law on the reasonableness of contractual forum-selection clauses

23

is applied more strictly to arbitration contracts than to other contracts so as to disfavor arbitration. Under *Concepcion*, § 2 of the FAA preempts this application of state law.

Some post-*Concepcion* cases applying California law continue to find arbitration forum-selection clauses unenforceable as unconscionable. *See Newton*, 2012 WL 581318, at *9; *Antonelli*, 2012 WL 525538, at *6; *Chavez v. Bank of Am.*, No. C 10-653 JCS, 2011 WL 4712204, at *11 (N.D. Cal. Oct. 7, 2011). The *Newton* court explained that the FAA did not preempt this conclusion because refusing to enforce the forum-selection clause did not "compromise the informality, expeditious, or inexpensiveness of arbitration" or otherwise "single out the uniqueness of an agreement to arbitrate." 2012 WL 581318, at *11. Neither *Newton* nor other cases, however, discussed how California law treats forum-selection clauses outside of the arbitration context.

In one recent unpublished decision, *MacIntosh v. Powered, Inc.*, No. A129063, 2011 WL 2237938 (Cal. Ct. App. June 8, 2011), the California Court of Appeal concluded that a forum-selection clause in an arbitration clause contained in an employment agreement was not unconscionable. MacIntosh was a California resident working for Powered in California. Powered was headquartered in Texas. In the employment agreement that MacIntosh signed, he agreed to arbitrate any dispute against Powered in Texas. *Id.* at *1–3. MacIntosh argued that this forum-selection clause was unconscionable because "he resided in [California], and if forced to bring his claims in Texas, he would have to incur numerous expenses, including thousands of dollars for travel to and from Texas and lodging while in Texas." *Id.* at *13 (internal quotation marks omitted). The Court of Appeal rejected this argument, explaining that "MacIntosh made no claim that these costs would present any insurmountable impediment to pursuit of his claims." *Id.* This approach

24

is closer to the approach taken under California law on forum-selection clauses generally, not specific to arbitration, and to the approach taken under the FAA.

"Under the FAA, the court must order the parties to arbitrate in accordance with the terms of the agreement; one term of the agreement is the parties' forum selection clause." *KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 48 (1st Cir. 1999) (quoting *Snyder v. Smith*, 736 F.2d 409, 418 (7th Cir. 1984), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)) (internal quotation marks omitted).  Under generally applicable federal law, "forum-selection clauses are presumed enforceable, and the party resisting enforcement bears a heavy burden of proof."  *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008) (internal quotation marks omitted); *see also Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring) (explaining that "a valid forum-selection cause is given controlling weight in all but the most exceptional cases").  The party must show that the clause is unreasonable.  *Ginter*, 536 F.3d at 441.  The Fifth Circuit has identified four grounds for concluding that a clause is unreasonable:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum, (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy, or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Calix-Chacon v. Global Int'l Marine, Inc.*, 493 F.3d 507, 511 (5th Cir. 2007) (internal quotation marks omitted).  Parties claiming that a forum-selection clause is unreasonable because enforcement would be prohibitively expensive, such as James, must demonstrate that the "additional costs or

inconveniences" are "so grave that they create a situation where the plaintiff 'will for all practical purposes be deprived of his day in court.'" *Pugh v. Arrow Elecs., Inc.*, 304 F. Supp. 2d 890, 895 (N.D. Tex. 2003) (quoting *Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997)). "Inconvenience and increased cost do not automatically render a forum selection clause unreasonable." *Grossman v. Grossman*, Civ. A. No. 08-5528, 2009 WL 449133, at *5 (E.D. Pa. Feb. 23, 2009) (citing cases).

In this case, James has submitted an affidavit stating that forcing him to arbitrate in "San Mateo County, California or elsewhere" would be financially prohibitive. (Docket Entry No. 14, Ex. A, at 2). Given California's generally applicable principles on contractual forum-selection clauses—"[m]ere inconvenience or additional expense is not the test of unreasonableness of a mandatory forum selection clause," *Olinick*, 42 Cal. Rptr. 3d at 274—James's statement that forcing him to arbitrate in California will cause him additional expense is insufficient to make the forum-selection clause unenforceable. James's affidavit does not show that requiring him to arbitrate in California, absent the fee-splitting requirement, would be an insurmountable impediment to vindicating his statutory rights.[6] James relies heavily on the cost of securing local counsel for an arbitration in California. But there is no basis to conclude that local counsel is necessary. The main claim—the False Claims Act retaliation claim—arises under federal law, not California law. To the extent that California law does apply, that is true whether this case is arbitrated in California or litigated in Texas. James's current counsel took this case well aware of the Agreement's California

---

[6]James's statement that he cannot arbitrate *anywhere*—in California "or elsewhere"—because of the costs appears to be an exaggeration. Most of the costs James identifies are specifically associated with arbitrating in San Mateo, California—the costs of traveling to and from California and staying in a hotel, and the costs of securing local counsel, which James asserts he would need. If the forum-selection clause were severed, but the arbitration clause otherwise upheld, it is difficult to see why arbitrating in Texas would be financially prohibitive. This is especially true given this court's previous finding as to the unconscionability of the arbitration clause's cost-splitting provision.

choice-of-law provision and has shown himself fully capable of handling California-law issues. James has cited no requirement that a California arbitrator would require local counsel. Finally, the informality of arbitration compared to litigation further reduces any need for local counsel. That leaves as the only added expenses those for travel and hotel. These are the type of expenses that courts have routinely found insufficient to invalidate contractual forum-selection clauses for litigation rather than arbitration. And, in this case specifically, James will be arbitrating a single, relatively simple retaliation claim against a single party. Given the nature of arbitration compared to litigation, including the absence of discovery, he can expect one relatively brief trip to California. Under these circumstances, he cannot show that such expenses would be prohibitive.

It is also worth noting that James's claim is not a negative- or small-value consumer claim that provides little incentive to pursue in a distant forum. The FAA provides for significant damages. It is also worth noting that the arbitration clause in the Agreement authorizes the arbitrator to award attorneys' fees if the "statutory section at issue in the dispute authorizes the award of attorneys' fees to the prevailing party[.]" (Docket Entry No. 5, Ex. A, ¶ F). In a False Claims Act whistleblower suit under 31 U.S.C. § 3730(h), "attorneys' fees and litigation costs are categorized as a subset of damages," which is unusual for fee-shifting statutes. *Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886, 894 (8th Cir. 2000) (citing *Neal v. Honeywell, Inc.*, 191 F.3d 827, 833 (7th Cir. 1999)). If James succeeds in the arbitration, his attorney's fees and costs are recoverable as damages. *See Moran v. Superior Court*, No. F061801, 2011 WL 5560178, at *9 (Cal. Ct. App. Nov. 16, 2011) ("An award of costs to the prevailing party is also authorized by statute and, in accordance with the applicable substantive law, must be made by the arbitrator as a matter of right unless an exception applies. Consequently, the arbitration agreement does not impermissibly deny

27

or limit the availability to plaintiff of an award of attorney fees or costs, or any other relief available under the applicable substantive law."); *see also Sanchez v. W. Pizza Enters., Inc.*, 90 Cal. Rptr. 3d 818, 835 (Ct. App. 2009) ("The arbitration agreement does not limit the limitations periods, the remedies available, or the amount of punitive damages."). If James loses, he will not owe Conceptus for its attorney's fees or costs.

In sum, after *Concepcion*, the forum-selection provision in the arbitration clause James agreed to is not substantively unconscionable under the California law generally applicable to contracts. To the extent that California law on such provisions treats them differently in contracts calling for arbitration than in other contracts and is applied to "disfavor" arbitration, that law is preempted under § 2 of the FAA.

### 4.  Severability

The Agreement's arbitration clause contains one unenforceable provision: the requirement that James split arbitration fees and costs with Conceptus. This cost-splitting provision does not make the entire arbitration clause unenforceable, given the Agreement's severability provision. California's "strong preference is to sever *unless* the agreement is 'permeated' by unconscionability." *Ajamian*, 2012 WL 503876, at *22 (emphasis in original). The cost-splitting provision does not have this effect. If the provision is severed, Conceptus, as the party imposing the clause as a condition of James's employment, must pay all arbitration fees and costs. *See Parada*, 98 Cal. Rptr. 3d at 762. Because severing the cost-splitting provision cures the illegality, severance, rather than refusing to enforce the arbitration clause, is appropriate. *See Laughlin*, 2012 WL 298230, at *7 (concluding that an arbitration agreement, with the cost-splitting provision severed, is otherwise enforceable).

28

## IV.    Conclusion

The Agreement's arbitration clause is enforceable with its cost-splitting provision severed. This court cannot compel arbitration because Conceptus seeks arbitration outside of this district. *See Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003) ("[T]he Federal Arbitration Act prevents federal courts from compelling arbitration outside of their own district. *See* 9 U.S.C. § 4 (stating that the arbitration must take place 'within the district in which the petition for an order directing such arbitration is filed')[.]").  Section 3 of the FAA "requires courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement.'" *Concepcion*, 131 S. Ct. at 1748.  In the Fifth Circuit, courts dismiss a case without prejudice "when *all* of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (emphasis in original).  Conceptus's motion to dismiss, (Docket Entry No. 5), is granted.  The motion to stay discovery, (Docket Entry No. 17), is denied as moot.  This case is dismissed, without prejudice, in favor of arbitration in California under the parties' Agreement.

SIGNED on March 12, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge